UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| OPAL MILLMAN, ERIC POWELL, and LAURY POWELL on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED TECHNOLOGIES CORP., LEAR CORPORATIONS EEDS AND INTERIORS, as successor to United Technologies Automotive, Inc., ANDREWS DAIRY STORE, INC., L.D. WILLIAMS, INC., CP PRODUCT, LLC, as successor to Preferred Technical Group, Inc., and LDW DEVELOPMENT, LLC,<br><br>Defendants. | Cause No. 1:16-CV-312-HAB |

**OPINION AND ORDER**

Andrews is a small town located in Huntington County, Indiana. Plaintiffs allege that Defendants owned and/or operated two businesses that contaminated essentially the entire town, including the soil, groundwater, and utility lines, with petroleum and volatile chlorinated compounds. Before the Court now is Plaintiffs' Motion for Class Certification (ECF No. 247) which asks the Court to "certify a class as to liability-only issues pursuant to Federal Rule of Civil Procedure 23." (*Id*. at 1). For the reasons set forth below, the Court concludes that certification of Plaintiffs' proposed issues is not appropriate, and the Motion will be denied.

**I.   Factual Background**

Plaintiffs Opal Millman, Eric Powell, and Laury Powell identify two sites that they allege are responsible for all the contamination in Andrews: the former United Technologies Automotive

site (the "UTA Facility") and the Andrews Dairy Store (the "Gas Station"). Both sites are in the center of town, and it is undisputed that both sites released contaminants into the environment. According to Plaintiffs, these releases have comingled and spread, subjecting nearly every resident of Andrews to toxic vapors through a process called vapor intrusion.

The UTA Facility was operated by various entities, including Defendants United Technologies Corp. ("UTC") and Lear Corporations Eeds and Interiors, as a manufacturing plant from 1961 to 2007. Workers at the UTA Facility used trichloroethylene ("TCE"), a powerful chlorinated solvent and known human carcinogen, to clean metal parts in two degreaser pits at the southern end of the property. TCE was not used in small amounts – in a filing with the Indiana Department of Environmental Management ("IDEM") in 1993, UTA reported that it used as much as 14.5 tons of TCE per year.

While the parties appear to disagree on scope and culpability, there is no dispute as to whether the use of TCE at the UTA Facility resulted in contamination. In 1993 or 1994, UTA entered into Indiana's Voluntary Remediation Program to address the presence of TCE and other volatile organic compounds ("VOCs") found in the soil and groundwater both on- and off-site. UTC, as UTA's former corporate parent, continues UTA's remediation work to this day. UTA and UTC's remediation efforts include the installation of an air stripper on the town's municipal water supply, continued monitoring of the town's water supply, ongoing vapor testing and mitigation of structures within the town, and other environmental remedial actions.

The Gas Station was previously owned by Defendant Andrews Dairy Store, Inc., but is currently operated by L.D. Williams, Inc., with the property owned by LDW Development, LLC. The Gas Station has operated since the 1960's, with an automobile repair business operating on the property in the 1970's. Four underground storage tanks were installed in 1979, with capacities

ranging from 1,000 gallons to 10,000 gallons. The smallest tank was removed in 1998, but the other three tanks remain in operation.

Again, the parties disagree on scope and culpability, but there is no dispute as to whether contamination occurred as a result of the operation of the Gas Station. In 1993 the Gas Station was entered into IDEM's Leaking Underground Storage Tank program. Since then, remediation efforts have been undertaken to address the release of petroleum products from the underground storage tanks. Those remediation efforts continue and, in 2018, L.D. Williams submitted a Corrective Action Plan to IDEM for remediation of the contamination around the Gas Station site.

## II. Opinions of Dr. Vasiliki Keramida

Plaintiffs have retained Dr. Vasiliki Keramida as their expert in this case. Dr. Keramida has submitted two opinions. The first, submitted on July 12, 2017, opined that: (1) the UTA Facility and the Gas Station are the sole sources of the widespread chemical contamination now present in Andrews; (2) the Class Area – consisting of those properties impacted by the contamination—includes 243 properties, including 186 residences[1]; and (3) remediation is urgently required to eliminate these chemicals from the environment and to eliminate the attendant human health risks.

After Dr. Keramida submitted her initial opinion, additional data was collected from groundwater, sewers, and several homes. Based on the new data, Dr. Keramida submitted a second affidavit on April 9, 2019 (ECF No. 249). Dr. Keramida now believed that her initial estimates were too conservative, and that contamination had traveled through utility and sewer lines to the far reaches of the town. Accordingly, Dr. Keramida now opined that the impacted area includes 661 properties, including 510 residences, 44 mobile homes, 22 commercial properties, and 85 unoccupied properties[2]. Dr. Keramida also opined that the town's drinking water supply remained

---

[1] A map overlay depicting the original Class Area can be found in the record at ECF No. 249-7.
[2] A map overlay depicting the amended Class Area can be found in the record at ECF No. 250-5.

3

contaminated despite remediation efforts, and that the only satisfactory course of action is for Defendants to remediate all remaining contamination both from their sites and from the impacted areas in the town.

### III. Proposed Class

Plaintiffs propose the class be defined as follows:

> All persons who have owned, rented, or resided at property within the Class Area at any time between 1983 and July 18, 2016.

The Class Area is defined as the area impacted by the contamination, as set forth in Dr. Keramida's second affidavit.

### IV. Proposed Issues for Certification

Plaintiff submit the following issues for certification of a liability-only issue class:

1) Each Defendant's role in creating the contamination emanating from the UTA Facility, including their historical operations, disposal practices, and chemical usage;

2) Each Defendant's role in creating the contamination emanating from the Gas Station, including their historical operations, disposal practices, chemical usage, and history of underground storage tank maintenance, repairs, and leaks;

3) Whether it was foreseeable to the Defendants that their handling, disposal, and/or leaking of chemicals could cause an off-site plume of Contamination;

4) Whether Contamination emanating from the UTA Facility has reached the soil, groundwater, and/or utility lines beneath the homes and properties within the Class Area;

5) Whether Contamination emanating from the Gas Station has reached the soil, groundwater, and/or utility lines beneath the homes and properties within the Class Area;

6) Whether the Defendants' actions and inactions have caused Class members and properties within the Class Area to incur the potential for vapor intrusion from Contamination emanating from the UTA Facility and/or the Gas Station;

7) Whether the Defendants negligently failed to investigate and remediate the Contamination at and flowing from their respective facilities;

8) Whether, and to what extent, environmental remediation is needed as a result of the Contamination; and

9) Whether the Contamination constitutes an "imminent and substantial endangerment" to human health and/or the environment under the Resource Conservation and Recovery Act ("RCRA").

(ECF No. 248 at 19–20).

## V. Evidentiary Motions

Before addressing the issue of class certification, it is necessary that this Court address the evidentiary motions that have been filed in this case. All Defendants filed a Motion to Exclude the Expert Opinions of Dr. Vasiliki Keramida (ECF No. 257) in which they sought the exclusion of Dr. Keramida's "opinions as to the geographic scope of the putative Class Area based on the existence of utility lines." (ECF No. 258 at 7). Defendants L.D. Williams, Inc. and LDW Development, LLC, separately filed a Motion to Exclude the Opinions of Dr. Vasiliki Keramida (ECF No. 255) seeking to exclude Dr. Keramida's "conclusion that chlorinated solvents were used and released at the Andrews Dairy Site." (*Id*. at 2). Plaintiffs have responded to each Motion. (ECF Nos. 276, 278).

The Seventh Circuit has held that district courts should resolve any objections to expert testimony that is "critical to class certification" before addressing the merits of a motion for class certification. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012). "Critical" means "important to an issue decisive for the motion for class certification." *Id*. As a threshold issue, then, the Court must determine whether the subject opinions regarding the scope of the Class Area and the type of contamination flowing from the Gas Station are "critical" to the determination of the pending Motion for Class Certification.

5

The Court concludes that the opinions at issue are not important to an issue decisive for the motion for class certification, and therefore Defendants' objections do not need to be resolved at this stage. Initially, the certification analysis would be the same under Dr. Keramida's first opinion, which is not challenged by Defendants, as it would be under her second opinion. The increased scope in the second opinion makes the proposed class more numerous, but even the class proposed by her first opinion meets the numerosity requirement under Federal Rule of Civil Procedure 23(a)(1). *CL–Alexanders Laing & Cruickshank v. Goldfeld*, 127 F.R.D. 454, 455–57 (S.D.N.Y. 1989); *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 95 F.R.D. 496, 498 (N.D. Ill. 1982). The Court concludes that the expansion of the Class Area in Dr. Keramida's second opinion does not affect any other consideration under Rule 23(a) or (b), and therefore is not "critical" to the Court's certification analysis.

The same can be said of Dr. Keramida's opinion regarding VOC contamination from the Gas Station. As noted above, there is no dispute that the Gas Station contaminated *some* area to *some* degree with *some* substance. While the precise identification of the kind of substances emitted from the Gas Station may be relevant to a liability determination down the road, it is largely irrelevant to the determination as to whether Plaintiffs' proposed class should be certified. The Court finds that it can reach the merits of the Motion for Class Certification without reaching the merits of the evidentiary motions, and therefore declines to rule on them at this time. *See Hostetler v. Johnson Controls, Inc.*, Case No. 3:15-CV-226-JD, 2018 WL 3868848 at *3 (N.D. Ind. Aug. 15, 2018).

## VI. Plaintiffs Cannot Satisfy the Requirements of Rule 23(a)

Under Rule 23(a), class certification is permitted only if these four requirements are met: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

If Rule 23(a) is satisfied, the proposed class must also fall within one of three categories in Rule 23(b), which the Seventh Circuit has described as: "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because the risk that the class action adjudication would, as a practical matter, either dispose of the claims of nonparties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. The Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). "On issues affecting class certification . . . a court may not simply assume the truth of the matters as asserted by the plaintiff." *Messner*, 669 F.3d at 811. Rather, the named plaintiff bears the burden of showing that a proposed class satisfies each requirement of Rule 23 by a preponderance of the evidence. *Id*. "Failure to meet any one of the requirements of Rule 23 precludes certification of a class." *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 564 U.S. at 351. The Seventh Circuit has directed district courts to exercise "caution in class certification generally." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008).

For the purposes of this Court's analysis it is sufficient to focus on the typicality requirement of Rule 23(a)(3), as this is where the failures in Plaintiffs' proposed class are the most evident. A claim is typical if it "arises from the same event or practice or course of conduct that

7

gives rise to the claims of other class members and . . . her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims "'have the same essential characteristics as the claims of the class at large.'" *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

It cannot be said that the claims of the proposed class members "are based on the same legal theory." Plaintiffs have pled several legal theories in this case, including: trespass; nuisance[3]; negligence; claims under Ind. Code §§ 13-30-9-2 and -3; negligent infliction of emotional distress; claims under 42 U.S.C. § 6972(a)(1)(B); and a claim for punitive damages. (ECF No. 156). However, those legal theories are not universally applicable to all proposed class members.

Take the claim for trespass, for example. Under Indiana law, a plaintiff is generally required to establish two elements when pursuing a trespass claim. First, the plaintiff must show that he possessed the land when the alleged trespass occurred. Second, the plaintiff must demonstrate that the trespassing defendant entered the land without a legal right to do so. *See KB Home Ind. Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297, 308 (Ind. Ct. App. 2010). The only class members with a viable claim for trespass, then, are those that owned the land when the contamination reached their parcel. Subsequent owners, who obtained a possessory interest after the trespass occurred, have no claim. *Id.* at 309 (affirming summary judgment on a contamination-related trespass claim brought by subsequent purchaser). This would likely include the Powell

---

[3] It is not at all clear that Plaintiffs can even bring a claim for nuisance. Generally, a public nuisance is caused by an unreasonable interference with a common right. *Blair v. Anderson*, 570 N.E.2d 1337, 1339 (Ind. Ct. App. 1991) (citing Restatement (2d) of Torts, § 821B). A private party generally has no right of action under a public nuisance because "[i]t is the province of the public authorities to procure redress for public wrongs." *Id.* (quoting *Adams v. Ohio Falls Car Co.*, 131 Ind. 375, 379, 31 N.E. 57 (1892)). However, an aggrieved party may bring a private action to abate or enjoin a public nuisance if that party demonstrates a special and peculiar injury apart from the injury suffered by the public. *Id.* at 1339–40. Since the Plaintiffs seek class certification, they necessarily lack "a special or peculiar injury."

Plaintiffs, who did not begin living at their home until 1989, some six years into the proposed class period. (ECF No. 248-22 at 1).

A similar problem exists with respect to Plaintiffs' claim under the RCRA. Claims under the RCRA, like all other claims, require that a plaintiff have standing to bring the claim. *Interfaith Comm. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3rd Cir. 2005). This requires, at a minimum, an injury in fact that is concrete, distinct and palpable, and actual or imminent. *Id*. While the RCRA claims do not suffer from the same subsequent purchaser issues as the state court trespass claim, *DMJ Assocs., LLC v. Capasso*, 288 F. Supp. 2d 262 (E.D.N.Y. 2003), class member who sold their property prior to the migration of the contamination to their property would likely lack standing to present an RCRA claim. *Doyle v. Town of Litchfield*, 372 F. Supp. 2d 288, 302–04 (D. Conn. 2005).

The lack of typicality across class members and legal claims raises questions as to whether the named Plaintiffs can adequately represent the proposed class. Let's assume that the Powells did, in fact, purchase their home after their land was already contaminated. The Powells would be unable to bring a trespass claim, and therefore would have no incentive to pursue such a claim in the face of a settlement that would resolve the other, more applicable, claims. On the other hand, the Powells may have a significant incentive to pursue a RCRA claim that may not benefit many of the proposed class members. Contrary to the Powells' assertions, it does appear that they have interests that are potentially adverse to other proposed class members. (ECF No. 248-22 at 1).

Similar discussions can be had for many, if not all, of the remaining claims. Plaintiffs have proposed a grab bag of potential legal theories. While every member of the proposed class may be able to pluck out one of those claims, none of the proposed class members, including the named Plaintiffs, appear to have the ability to take the entire bag. This leaves a situation where the

proposed class members are separated into multiple subclasses based on legal theories available to them and different defenses available to Defendants. While subclasses are permitted by Rule 23, those subclasses must still meet all other requirements for certification. *See*, *e.g.*, *In re Methyl Tertiary Butyl Ether ("MBTE") Products Liability Litigation*, 209 F.R.D. 323, 351 (S.D.N.Y. 2002). Plaintiffs do not address the potential for subclasses, so the propriety of subclasses need not be addressed here. It is sufficient to say that the legal theories pled are not typical across all class members, and therefore the requirement of typicality cannot be met. Accordingly, the proposed class cannot be certified.

## VII. Plaintiffs Cannot Satisfy the Requirements of Rule 23(c)(4)

Even if the Court were to overlook the Rule 23(a) shortcomings, it would still conclude that certification was inappropriate. Even when a claim as a whole cannot be resolved on a class-wide basis, Rule 23 allows an action to be "brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4); *see also Bell v. PNC Nat'l Ass'n.*, 800 F.3d 360, 379 (7th Cir. 2015) ("The fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class."). As the Seventh Circuit has described it, this provision can be used to "carv[e] at the joints of the parties' dispute":

> If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, clamant-specific issues to individual follow-on proceedings.

*Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003); accord *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012). Thus, even if issues like causation and damages might require individual hearings for each claimant, a common issue that is central to each class member's claim can be certified and resolved in a class-wide proceeding.

10

*McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 875–76 (7th Cir. 2015); *Pella Corp v. Saltzman*, 606 F.3d 391, 394–95 (7th Cir. 2010); *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."). Once those common issues have been addressed, any remaining elements of liability and damages can be resolved in individual trials for each class member.

Proceeding in that manner can require caution, however. Under the Seventh Amendment, "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. In certifying a given issue for class treatment, a court must thus ensure that the issue is severable from the remaining issues and will not need to be re-examined in the subsequent trials. *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("Bifurcation and even finer divisions of lawsuits into separate trials are authorized in federal district courts. . . . However, as we have been at pains to stress recently, the district judge must carve at the joint. . . . [T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."); *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 320 (5th Cir. 1998) ("[I]f separate trial[s] are ordered, the separately tried issues must be distinct and separable from the others."). Even aside from Seventh Amendment concerns, if the class issues are not severable from the individual issues and would have to be revisited in each individual proceeding, then there is no efficiency to be gained through the class proceeding, and the burdens and expenses of the class action are for naught. *See Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011) (finding that certification was improper where the class issue was "inseverable from other issues that would be left for follow-up proceedings").

11

The Court concludes that Plaintiffs' proposed issues do not carve at the joint, largely because the scope of the proposed class does not leave a joint at which to carve. Part of the problem here is the lack of discussion of Rule 23(c)(4) by the Plaintiffs in their briefs. Plaintiffs' opening brief (ECF No. 248) is thirty-nine pages in length, with only one page devoted to explaining how their proposed issues would enhance the resolution of these proceedings. Then, after Defendants specifically challenged the propriety of certification under Rule 23(c)(4), Plaintiffs devoted only an additional page to the discussion in their twenty-five-page Reply (ECF No. 275). The Court must echo the sentiments of Judge DeGuilio in *Hostetler* where he noted that Plaintiffs, in failing to specifically tie their causes of action to their proposed issues, missed "out on their opportunity to analyze how these issues would drive the resolution of those claims." *Hostetler*, 2018 WL 3868848 at *8 n.3. After reviewing Plaintiffs' briefs, the Court has little indication as to how Plaintiffs intend to advance this litigation with their proposed issues, or why they believe the line of demarcation they have chosen represents the appropriate carving joint of their case.

Plaintiffs' arguments notwithstanding, the Court concludes that Rule 23(c)(4) certification is inappropriate here because, even if a jury were to find in Plaintiffs' favor on every proposed issue, the proof required in the subsequent individual trials would remain unchanged. Take the negligence claims, for instance. Plaintiffs concede that they are not attempting to certify issues of causation and damages, and that these issues "would be the most expensive and time-consuming aspect of this case." (ECF No. 248 at 37). In relative terms, then, the purported common issues are of relative insignificance when compared to the individual issues, calling into question the utility of the Rule 23(c)(4) process. *See Hostetler*, 2018 WL 3868848, at *8. That aside, Plaintiffs' concession means that each class member would have to prove the following at a subsequent trial: (1) whether their property has been contaminated; (2) by which Defendant; (3) when the

contamination occurred; (4) whether they were exposed to the contamination; (5) whether they suffered injury; and (6) whether their injury was proximately caused by the Defendants' conduct.

It is difficult to see how any of these issues would be resolved by Plaintiffs' proposed issues. While resolution of class issues 4 and 5 may resolve the issue of whether a particular property was contaminated at some point in time, the fact of contamination is part and parcel of the remaining matters to be proven. Stated another way, if a class member proves the date their land was contaminated, they have necessarily proven that the land was contaminated. The proceeding envisioned by Plaintiffs, then, will play little, if any, role in resolving the claims of the individual class members.

The same is true of the property-related causes of action. As noted above, simply addressing the fact of contamination does little to advance the claims when the existence of the claim depends on the date of the contamination relative to a class member's date of ownership. As with the negligence claims, if a class member proves the date of contamination, they will have proven the existence of contamination. There is nothing to be added by a proceeding under Rule 23(c)(4).

At its most basic level, the problem with Plaintiffs' proposed class is its temporal breadth. When a class period encompasses more than thirty years, there are simply going to be too many disparities between the proposed class members, from the periods of ownership to the dates of contamination to the availability of different legal theories, for class treatment to be appropriate. It is this temporal breadth that distinguishes this case from those on which Plaintiffs rely. *See Mejdrech*, 319 F.3d at 911 (all members of the proposed class lived within a mile or two of the contamination source at the time suit was filed); *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 408 (6th Cir. 2018) (proposed class composed of current owners of contaminated

13

property). While there may be cases where a group of putative class members are sufficiently homogenous over an extended period of time to permit class certification across decades, this is not one of them.

Plaintiffs' proposed issues can only demonstrate there is the *potential* for a Defendant to be liable to any particular class member. Actual liability, along with damages, would have to be resolved later. Thus, a class proceeding here can only *exclude*, not *include*, potential plaintiffs. The class proceeding can only benefit the Defendants and they oppose certification. *Cf. Hostetler*, 2018 WL 3868848, at *14.

Having concluded that the proposed issues will not advance the resolution of this litigation, the Court finds it unnecessary to delve into the facial deficiencies with the individual issues themselves.[4] It is sufficient to say that this Court does not find that this case presents issues that are common or superior enough to make Rule 23(c)(4) certification appropriate.

**VIII. Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Class Certification (ECF No. 247) is DENIED. Defendants' Motions to Exclude (ECF Nos. 255 and 257) are DENIED as moot.

SO ORDERED on November 18, 2019.

                      s/ Holly A. Brady
                      JUDGE HOLLY A. BRADY
                      UNITED STATES DISTRICT COURT

---

[4] For instance, how do Plaintiffs propose a jury to determine each Defendants' "role" in the alleged contamination, including "their historical operations, disposal practices, and chemical usage" in a way that is useful to future proceedings? How can a jury determine the extent of remediation required on a class-wide basis when the answer will almost certainly vary from parcel to parcel? Why is a determination as to whether the contamination constitutes a "imminent and substantial endangerment" under the RCRA a class-wide issue when the majority of the proposed class no longer lives in the Class Area and therefore has no RCRA claim?