UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| OPAL MILLMAN, et al., ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 1:16-CV-312-HAB |
| ) | |
| RAYTHEON TECHNOLOGIES ) | |
| CORPORATION F/K/A UNITED ) | |
| TECHNOLOGIES CORPORATION, et al., ) | |
| ) | |
|     Defendants. ) | |

**OPINION AND ORDER**

Once separate claims, the suits filed by Opal Millman ("Millman") and Eric and Laury Powell ("Powells") were consolidated "for all purposes" by this Court on motion by Defendants and over Plaintiffs' objection. Defendants have thought better of that procedural move. They now come before the Court asking that the consolidated case be tried to two juries, one for Millman and one for the Powells. Defendants claim that, because of the differences in alleged injuries and exposures, they will be "severely prejudiced" by potential juror confusion. The Court is not convinced. For the reasons below, Defendants' motions for separate trials will be denied.

**I.      Procedural History**

This case began in 2016 when Millman filed a class action complaint in the Huntington County Superior Court. That suit was removed by Defendants under the Class Action Fairness Act. Six months later, the Powells filed a federal action, naming the same Defendants, seeking injunctive relief under the Resource Conservation and Recovery Act ("RCRA"). The two suits were filed by the same law firm and, for the most part, alleged identical facts.

Noting the similarity in the cases, Defendants moved to consolidate the matters. (*See* ECF Nos. 49, 50). As Plaintiffs noted, Defendants were not equivocal in their belief that the cases were substantively the same; Defendants stated it forcefully and repeatedly. (*See* ECF No. 316 at 9–11) (collecting quotes). The Court agreed with Defendants, with Judge Phillip Simon holding that "[a]bsent consolidation, there would be separate trials involving identical legal claims and substantially overlapping witnesses and documentary evidence. That would waste judicial time and resources for claims that could be more efficiently adjudicated in one trial." (ECF No. 66 at 10). Thus, the matters were consolidated for "[a]ll further proceedings." (*Id*. at 15).

After more than two years of class-related discovery, Plaintiffs moved to certify a liability-only class action in April 2019. (ECF No. 247). That motion was denied. (ECF No. 280). In summary, the Court found that Plaintiffs could not show the typicality requirement of Federal Rule of Civil Procedure 23(a)(3) or that the case was amenable to particular issue certification under Rule 23(c)(4). The case then proceeded on Plaintiffs' individual claims only.

Following eighteen months of additional discovery, Defendants filed these motions for separate trials. (ECF Nos. 311, 313). The motions are now fully briefed (*see* ECF Nos. 316, 318, 319) and ripe for ruling.

**II.    Factual Background**

The parties' briefs discuss the same case, but one could be forgiven for assuming otherwise. Depending on the brief one reads, the cases of Millman and the Powells are either: (1) virtually identical, save some personal details; or (2) very different, sharing only a handful of background facts. These competing viewpoints are at the heart of the separate trial issue.

A.     *Facts Shared by All Plaintiffs*

At the most basic level, this case arises out of Defendants admitted release of hazardous chemicals, including chlorinated solvents like trichloroethylene ("TCE"), in and around the town of Andrews, Indiana. These releases flowed from two facilities: a manufacturing facility owned by Defendant Raytheon's corporate predecessor ("UTA Facility") and a gas station now owned and operated by the L.D. Williams Defendants ("Gas Station"). Workers at the UTA Facility used TCE, a known human carcinogen, to clean metal parts in two degreaser pits at the southern end of the property. Plaintiffs have identified at least five employees who will testify to the use and improper disposal of TCE. The chemical was not used in small amounts – in a filing with the Indiana Department of Environmental Management ("IDEM") in 1993, UTA reported that it used as much as 14.5 tons of TCE per year.

In 1993 or 1994, the UTA Facility entered into Indiana's Voluntary Remediation Program to address the presence of TCE and other volatile organic compounds ("VOCs") found in the soil and groundwater both on- and off-site. That remediation work continues to this day. The remediation efforts include the installation of an air stripper on the town's municipal water supply, continued monitoring of the town's water supply, ongoing vapor testing and mitigation of structures within the town, and other environmental remedial actions.

The Gas Station has operated since the 1960's, with an automobile repair business operating on the property in the 1970's. Four underground storage tanks were installed in 1979, with capacities ranging from 1,000 gallons to 10,000 gallons. The smallest tank was removed in 1998, but the other three tanks remain in operation. In 1993, the Gas Station was entered into IDEM's Leaking Underground Storage Tank program. Since then, remediation efforts have been undertaken to address the release of petroleum products from the underground storage tanks. Those

3

remediation efforts continue and, in 2018, L.D. Williams submitted a Corrective Action Plan to IDEM for remediation of the contamination around the Gas Station site. The homes of Millman and the Powells are located directly across the street from the Gas Station and downgradient from the UTA Facility.

### B.  *Facts Specific to Individual Plaintiffs*

The most obvious difference between Millman and the Powells is the claimed injuries. Millman claims that she has developed trigeminal neuralgia, a chronic condition affecting the trigeminal nerve, because of her exposure to the VOCs emitted by Defendants. The Powells, on the other hand, allege only a general fear and increased risk of potential future health effects.

Indoor air testing of Millman's residence began in July 2006. Based on the results of that testing, a vapor mitigation system was installed in Millman's crawlspace. Since March 2017, all tests for VOCs in Millman's home have shown levels below applicable IDEM screening levels. Testing of the Powells' home did not begin until 2013. That testing has always shown VOC levels below applicable IDEM limits. Thus, no vapor mitigation system has been installed in their home.

As one would expect, the three Plaintiffs have different personal histories. Each have different medical backgrounds, treating physicians, and experts that will testify about their damages. They have lived at their respective residences for different periods of time. They have been exposed to different levels of VOCs and the exposure came from different sources, including Plaintiffs' employment and hobbies.

### III.  Legal Analysis

Defendants move under Rule 42(b), which states that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a

separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). The granting of separate trials rests in the discretion of the district court. *Ammesmaki v. Interlake S.S. Co.*, 342 F.2d 627, 631 (7th Cir. 1965).

In exercising its discretion, the Court is guided by the Seventh Circuit's discussion in *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). First, the Court must determine whether separate trials would avoid prejudice to a party or promote judicial economy. *Id*. Only one of those criteria need be met. *Id*. Next, the Court must be satisfied that the decision to grant separate trials will not unfairly prejudice the non-moving party. *Id*. Finally, separate trials must not be granted if doing so would violate the Seventh Amendment. *Id*. Defendants, as the movants, bear the burden of proving that separate trials are appropriate. *Trading Techs. Intern., Inc. v. eSpeed, Inc.*, 507 F. Supp. 2d 870, 871 (N.D. Ill. 2007).

Understanding that two trials rarely promote judicial economy when one might suffice, Defendants assert that separate trials are required to avoid prejudice. Defendants claim that, if the claims are tried jointly, "the sympathetic nature of plaintiffs' claims may cause the jury to disregard significant differences in each of their medical, residential, and employment histories, along with the stark difference in the type of injuries they allege." (ECF No. 312 at 7). Reduced to its essence, Defendants' argument is that a jury cannot be expected to keep the facts in Millman's claim separate from those of the Powells.

The Court does not share Defendants' concerns, largely because of the "significant differences" noted throughout Defendants' briefs. If Defendants' briefs are accurate, virtually all the causation and damages evidence will be different for each Plaintiff. This includes causation experts (ECF No. 312 at 7–9), medical histories (*Id*. at 9–10), medical providers and treating physicians (*Id*. at 10–11, 15), and evidence on each Plaintiffs' exposure history (*Id*. at 12–16; ECF

No. 319 at 11–12). Defendants' own experts will provide different opinions about each Plaintiff. (ECF No. 312 at 11). Even if the claims are tried together, then, there appears to be little, if any, overlap in the evidence to be presented as to the details of each claim.

What this tells the Court is that it will be easy for jurors to keep the claims straight. Assume, for a moment, that each Plaintiff had the same treating physician. In that scenario, a single witness would testify to the alleged medical maladies of each Plaintiff. That witness' testimony might flow freely from one Plaintiff to another and back, with little in the way of clear demarcation. *That scenario* might be confusing. But, according to Defendants, that won't happen here. Each witness' testimony will be devoted to a single claim, and perhaps a single Plaintiff. There will be a clear break between evidence in support of the individual claims, that being a new person on the witness stand. In this way, the Court finds it less likely that the evidence will confuse jurors than in many other multi-claim and multi-party cases.

Defendants' preferred authority, *Bailey v. Northern Tr. Co.*, 196 F.R.D. 513 (N.D. Ill. 2000), an employment discrimination case, does not alter the Court's analysis. First, the Court notes that separate trial decisions in other cases will always be of limited value since the decision must be made on a "case by case" basis. *CDX Liquidating Trust ex rel. CDX Liquidating Trustee v. Venrock Assocs.*, 389 B.R. 76, 80 (N.D. Ill. 2008). Indeed, it is not difficult to find case law from the same court that decided *Bailey* that reaches the opposite conclusion. *See*, *e.g.*, *Davis v. Packer Eng'g, Inc.*, 2016 WL 11689521 (N.D. Ill. Nov. 14, 2016) (denying a motion for separate trials in a multi-plaintiff employment discrimination claim). Thus, unless the facts are identical, other cases applying Rule 42(b) are valuable for blackletter law and little else. *Bailey* does not present identical facts to the Court.

It's limited value notwithstanding, *Bailey* is distinguishable on legal grounds. First, the discussion of Rule 42(b) is dicta, as the *Bailey* court had determined that the plaintiffs in that case had been misjoined under Rule 20(a) and would be severed. *Bailey*, 196 F.R.D. at 515–16. Moreover, the plaintiffs in *Bailey* "fail[ed] to respond to defendant's argument regarding prejudice," leaving the court's decision a foregone conclusion. *Id*. at 517–18. Neither factor appears here.

The Court also believes that Defendants have greatly minimized the foundational evidence that would need to be duplicated in the event of separate trials. For instance, Defendants state that the toxicity of VOCs will be "briefly mentioned" during trial. (ECF No. 319 at 9). The Court doubts that the discussion of VOCs at trial will either be brief or confined to a mention. Rather, the toxicity of the relevant chemicals is part and parcel to Plaintiffs' claims. If the chemicals are not toxic, presumably they could not cause the kinds of damages alleged. Toxicity, then, is inseparable from the causation element. Plaintiffs will no doubt give such an important topic more than the once-over-lightly treatment.

Similarly, Defendants claim that the Court should not be concerned with evidence about their release of toxic chemicals because "[t]he fact that contamination was released and because present in the groundwater has been known and admitted by Raytheon since 1993." (*Id*. at 10). The Court assumes that the "admission" here is the enrollment in IDEM's remediation program. But the admission that some chemicals were released does not relieve Plaintiffs of the burden of proving that they were released in large enough quantities to cause the damages alleged. Plaintiffs seemingly understand this, having identified five witnesses by name that will testify to Raytheon's use and release of VOCs. That is evidence that Plaintiffs will need to present, twice if the claims are separated for trial.

Finally, any prejudice to Defendant can be cured through a properly instructed and informed jury. The Court must presume that a jury will capably sort through the evidence and follow limiting instructions from the court to consider each claim separately. *United States v. Stillo*, 57 F.3d 553, 557 (7th Cir. 1995). The pattern instructions published by the Seventh Circuit[1] contemplate the very issues raised by Defendants. They include instructions on the limited purpose of evidence (Pattern Instruction 1.09), evidence limited to certain parties (1.10), and multiple claims and plaintiffs (1.25). Jury instructions aside, Defendants are represented by capable attorneys from some of the largest firms in Indiana. The Court is confident that these attorneys can focus the jurors on the issues at bar.

Yes, prejudice to a party is reason enough for separate trials. That said, mere speculation that a party might be prejudiced by certain evidence is an inadequate basis to grant a separate trial. *Balzer v. Am. Fam. Ins. Co.*, 2009 WL 1543524, at *3 (N.D. Ind. June 2, 2009). But mere speculation is all Defendants offer here. The Court does not accept or share that speculation.

### IV. Conclusion

For these reasons[2], Defendants' motions for separate trials (ECF Nos. 311, 313) are DENIED.

SO ORDERED on July 30, 2021.

          s/ Holly A. Brady
          JUDGE HOLLY A. BRADY
          UNITED STATES DISTRICT COURT

---

[1] Available online at http://www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf.
[2] Because the Court does not find grounds for separation in the first place, it need not address the issue of judicial estoppel.