IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| OPAL MILLMAN, ERIC POWELL, and LAURY POWELL, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 1:16-cv-00312-HAB-SLC |
| RAYTHEON TECHNOLOGIES CORPORATION, LEAR CORPORATION EEDS AND INTERIORS, as successor to United Technologies Automotive, Inc., ANDREWS DAIRY STORE, INC., L.D. WILLIAMS, INC., CP PRODUCT, LLC successor to Preferred Technical Group, Inc., and LDW DEVELOPMENT, LLC, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT OPINIONS OF JASON LENZ, PH.D., MARK ROBERTS, M.D., PH.D., JAMES ALBERS, M.D., PH.D., JAMES MCCLUSKEY, M.D., PH.D., THOMAS MCHUGH, PH.D., JULIE PANKO, AND RICHARD LEWIS, PH.D., P.E.**

Thomas A. Barnard, Attorney No. 4011–49
Rodney L. Michael, Jr., Attorney No. 23681–49
Benjamin A. Wolowski, Attorney No. 33733–49
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone: 317-713-3500
Fax: 317-713-3699

*Attorneys for Plaintiffs*

Plaintiffs Opal Millman, Eric Powell and Laury Powell (collectively "Plaintiffs"), by counsel, respectfully move this Court to enter an order excluding the expert opinions and testimony of the following experts proffered by Defendant Raytheon Technologies, Inc., Lear Corporation, and CP Product (collectively "Raytheon"), and/or L.D. Williams, Inc. and LDW Development (collectively "LD Williams"), for the reasons set forth in this Motion and in the separate briefs filed contemporaneously herewith. In support of this motion, Plaintiffs further state as follows:

## I.      Background.

### A.      The Plaintiffs.

Opal Millman is an 86-year widow who resides at 156 North Main Street, Andrews, Indiana, where she has lived for over 45 years. (Expert Report of Zachary Torry, M.D., on Opal Millman, June 2, 2021 ("Torry Millman Rep."), at 3.)[1] She and her late husband Jack, moved into the house in 1968. (*Id.*) Jack died in his sleep in 2014 while suffering from trigeminal neuralgia. (*Id.* at 4.) Opal was diagnosed with trigeminal neuralgia in 2016. (*Id.* at 9.) She has undergone major medical treatments, including surgery, in her attempt to reduce the pain episodes cause by this nerve condition. (*Id.* at 33 - 46.)

Eric Powell is a 55-year-old man who resides at 148 North Main Street in Andrews. (Expert Report of Zachery Torry, M.D., on Eric and Laury Powell, June 2, 2021 ("Torry

---

[1] Dr. Torry's Reports on Opal Millman and on the Powells are being filed this date under seal by Raytheon, pursuant to counsel's agreement and due to the sensitive personal and medical information contained therein. Rather than file a second set of Dr. Torry's reports under seal, Plaintiffs cite to the copies filed by Raytheon.

Powell Rep."), at 3.)[2] The Powell home is immediately next door to the Millman home. Eric lived in this home since his birth in 1965 (except during 1987-89). (*Id.*) His wife, Laury Powell, is a 58-year-old woman, who moved into 148 North Main Street after she and Eric were married in 1989. (*Id.*)

### B.   Plaintiffs' homes and the contamination.

The Millman and Powell homes sit on top of comingled plumes of underground contamination released into the environment at Raytheon's former manufacturing plant on California and Jackson Streets in Andrews ("UTA Site"), and from the gas station immediately across the street, the Andrews Dairy Store, owned by LD Williams (the "Station"). (Report of James Wells, Ph.D., at 5.)[3]

The contamination released via dumping and other mishandling activities by Raytheon includes chlorinated solvents, primarily trichloroethylene ("TCE"), which breaks down in the environment to vinyl chloride ("VC"), and cis-1,2, dichloroethylene ("DCE") (TCE, VC and DCE being collectively referred to as "cVOCs," or chlorinated volatile organic compounds). (*Id.* at 9.) TCE and VC are classified by the EPA as known human carcinogens. (*Id.* at 10.)

The Station leaked petroleum into the subsurface and sewer system due to one or more leaks from its underground storage tank systems. (*Id.* at 9–10.) Petroleum contains benzene, among other constituents; benzene is also classified as a known human

---

[2] *See* n. 1, supra.

[3] Dr. Wells' report is attached as Exhibit I to Plaintiffs' memorandum in support of the motion to exclude the opinions of Dr. McHugh.

carcinogen. (*Id.* at 9.) The petroleum constituents and cVOCs are collectively referred to herein as "VOCs," or volatile organic compounds.

The groundwater in Andrews is extremely shallow, with a typical depth below ground surface at just 5 to 10 feet. (*Id.* at 3, 12.) The VOCs from Defendants' releases, once they enter the shallow groundwater, have migrated in the direction of regional groundwater flow, which is southwest. (*Id.* at 8.) Accordingly, Defendants' VOC migrated beneath the Millman and Powell home shortly after the chemicals were released from their respective sites. (*Id.* at 17.)

The Town of Andrews relies on its sole public well field to supply all drinking and other water needs for its residents. (*Id.* at 12.) The Andrews well field is southwest of the UTA Site and the Station, at the far southwest corner of the Town, as shown on the following map prepared by Raytheon's consultant:



WH-1, as shown at the far left of the plume, is one of the Town's three drinking water wells.

The plume of benzene released from the Station has been recently depicted by Williams' consultant as follows:



VOCs from Defendants' respective sites were detected in the Town's well field as early as 1983, establishing that the contamination had, by that time, already migrated from Defendants' properties and traveled beneath the Plaintiffs' homes. (*Id.* at 5.) Plaintiffs' homes sit directly on top of the plumes, as shown in the following diagram:



Exhibit 3. Cis-1,2-dichloroethane (cis-1,2-DCE) in groundwater in 2003.  Source: XDD, 2004, Groundwater Evaluation and Exposure Assessment Report for the Former United Technologies Automotive Facility in Andrews, Indiana.

These VOCs in the shallow groundwater volatize, creating vapors that migrate upward and into aboveground structures, as depicted in this EPA diagram:



Exhibit 5. Schematic showing the process of vapor intrusion. Vapors rise up from VOC-contaminated soil or groundwater and enter homes through cracks or penetrations in floors or basement walls, impacting indoor air quality. Source: EPA, "What is Vapor Intrusion" web page: https://www.epa.gov/vaporintrusion/what-vapor-intrusion. Accessed May 22, 2021.

Accordingly, Defendants' VOCs have, over time, entered the Millman and Powell homes through vapor intrusion, causing their exposure to cVOCs and benzene, among other chemicals. (*Id.* at 11, 17–21.)

**C.     Plaintiffs' experts relevant to this motion.**

**Dr. James Wells**, **Ph.D**., is an experienced environmental geologist who serves as Plaintiffs' expert on the issues of environmental exposures and remediation. Among other things, he has estimated the historical exposures suffered by Opal Millman and the Powells to VOCs within their respective homes. He has also offered opinions regarding the imminent and substantial endangerment posed by Defendants' chemicals, as well as

the proper remediation that is required to protect human health and the environment.

**Kenneth Spaeth, M.D.**, is an occupational and environmental medicine physician who has opined that, among other things, Ms. Millman's exposure to TCE in her home was a significant contributing factor to her development of trigeminal neuralgia. Dr. Spaeth has also opined that Ms. Millman, along with the Powells, are at increased risks for development of a variety of cancers and other health conditions as a result of their exposures to cVOCs within their homes. This last opinion is based in part upon his calculation of individual "inhalation cancer risks" for each of the Plaintiffs, which in turn is based upon Dr. Wells' estimates of their individual exposures.

**Kathleen Gilbert, Ph.D.**, is a research scientist, immunologist and toxicologist who has spent most of her entire career studying TCE and its effects on humans. She has opined that, among other things, Ms. Millman's exposure to TCE promoted the development of her trigeminal neuralgia. She also calculates individual "average daily doses" of exposure for each Plaintiff with respect cVOC, and concludes that they have increased risks of adverse health effects due to these individualized exposures.

## II.    Defendants' Expert Opinions Should Be Excluded

For reasons more thoroughly discussed in the accompanying memoranda, Plaintiffs hereby move to exclude opinions offered by the following experts engaged by Raytheon and LD Williams:

1.    **Jason Lenz, Ph.D**. LD Williams engaged Dr. Jason Lenz, who holds himself out as the founder, part-owner and Chief Executive Officer of Creek Run LLC Environmental Engineering. Dr. Lenz offers opinions to the effect that: 1) the Stations'

underground storage tanks and associated pipes have passed all release detection tests and inventory reconciliation, demonstrating no loss of gasoline; 2) LD Williams has responded to the petroleum contamination in a reasonable manner; and 3) other petroleum sources in Andrews are potential sources of the petroleum discovered at the Station. The Court should strike each of these opinions because, as he readily admits, Dr. Lenz is unqualified to opine on release detection systems, and his last two opinions are unreliable speculation.

2.      **Mark Roberts, M.D., Ph.D.,** is a medical doctor and Principal Scientist as Exponent, Inc. Dr. Roberts offers a variety of opinions rebutting Drs. Spaeth and Gilbert, especially with respect to whether TCE has caused Ms. Millman's trigeminal neuralgia. Dr. Roberts' opinions should be excluded because he is unqualified to opine on either trigeminal neuralgia or the EPA's "human equivalent concentration," and his opinions are otherwise unreliable and speculative.

3.      **James Albers, M.D., Ph.D.,** is a medical doctor and neurologist who opines that, among other things, TCE did not cause Ms. Millman's trigeminal neuralgia. Dr. Albers' opinions should be excluded because they amount to either unsupported speculation as to the cause of Ms. Millman's trigeminal neuralgia, and are otherwise unreliable due to his failure to consider relevant medical and scientific publications.

4.      **James McCluskey, M.D., Ph.D.,** is a medical doctor who opines that, among other things, TCE did not cause Ms. Millman's trigeminal neuralgia. He also opines that the Powells' exposures to benzene and other VOCs have not increased their risks of adverse health effects.  These opinions fail to meet Rule 702's reliability

requirements for multiple reasons, including the fact that he lacks the proper qualifications, has ignored relevant materials, and engages in speculation.

5. **Thomas McHugh, Ph.D.,** holds himself out as an environmental consultant with GSI, Inc. Dr. McHugh offers numerous opinions related to the contamination and exposures in Andrews, including an opinion that TCE exposure did not cause Ms. Millman's trigeminal neuralgia. Dr. McHugh's opinions violate nearly every principle under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Dr. McHugh bases opinions on insufficient data; misunderstands straightforward data and calculations; cherry-picks data; ignores contrary evidence; employs unreliable methods; offers opinions for which he is not qualified; makes unsupported claims about his methods; fails to reliably apply to methods to the facts; and uses undefined and vague terms to convey his opinions, rendering his opinions unreliable and unhelpful to the jury.

6. **Julie Panko** is a Principal Scientist at ToxStrategies, Inc., and a Certified Industrial Hygienist. Ms. Panko opines on the cumulative exposures suffered by the Plaintiffs to TCE and VC, and she calculates individual characterized risk for each Plaintiff. Ms. Panko's opinions should be excluded as unreliable because her opinions are based on the incorrect assumption that *no exposures* to these chemicals occurred prior to 1993. She agreed that her calculations would be inaccurate if exposures had occurred prior to 1993, and since they did, her opinions will not assist the jury in understanding the evidence.

7. **Richard Lewis, Ph.D., P.E.,** offers numerous opinions relating to the investigation, remediation and remaining risks posed by the Defendants' contamination

11

in Andrews. Dr. Lewis. Opinions regarding vapor mitigation systems installed in Andrews should be excluded because they are based on incomplete data and inaccurate assumptions; therefore his opinions are unreliable. The other challenged opinions should be excluded because they are either rebuttals to strawman arguments unrelated to Dr. Wells' actual opinions, or they consist of improper legal argument.

WHEREFORE, Plaintiffs request this Court enter an order excluding the expert testimony of Defendants' above-specified experts.

Respectfully submitted,

 /s/   *Thomas A. Barnard*
Thomas A. Barnard, Attorney No. 4011–49
Rodney L. Michael, Jr., Attorney No. 23681–49
Benjamin A. Wolowski, Attorney No. 33733–49
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone: 317-713-3500
Fax: 317-713-3699
*Attorneys for the Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on April 14, 2022, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record. The undersigned also certifies that a copy of the foregoing was sent via U.S. Mail, postage pre-paid, to:

> Andrews Dairy Store, Inc.
> c/o Michael Burton
> 138 Snowden Street
> Andrews, IN, 46702

*/s/   Thomas A. Barnard*

73330997v1

13