**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| OPAL MILLMAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 1:16-CV-312-HAB |
| | ) | |
| RTX CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

The parties in this case have filed numerous motions challenging each other's experts. The parties are familiar with the lengthy procedural and factual history of this case, none of which needs repeating here. Now before the Court are a Motion to Exclude the Expert Opinion Testimony of Vasilis Vasiliou, P.H.D. (ECF No. 474) and a Motion to Exclude the Supplemental Reports of Dr. Kenneth Spaeth and Dr. Kathleen Gilbert (ECF No. 476) filed by Defendants CP Product LLC, Lear Corporation EEDs and Interiors, and RTX Corporation (the "RTX Defendants").

For the reasons explained below, the Court GRANTS in part and DENIES in part the Motion to Exclude the Expert Opinion Testimony of Vasilis Vasiliou, Ph.D (ECF No. 474) and DENIES the Motion to Exclude the Supplemental Reports of Dr. Spaeth and Dr. Gilbert (ECF No. 476).

## I. BACKGROUND

On June 30, 2023, the RTX Defendants filed a Motion to Substitute Expert Witness after learning of the unexpected passing of one of their designated expert witnesses, Dr. James McCluskey. (ECF No. 445). The Court granted the motion and directed Plaintiffs Opal Millman, Eric Powell, and Laury Powell ("Plaintiffs") to disclose any rebuttal experts and corresponding

expert reports, as well as to file any Daubert motions related to the RTX Defendants' substitute expert witness, within 60 days of the RTX Defendants' disclosure of the substitute witness. (ECF No. 446). The Court also allowed the RTX Defendants to file Daubert motions related Plaintiffs' rebuttal experts within 60 days after disclosure by Plaintiffs. (*Id.*).

Pursuant to the Court's Order, the RTX Defendants disclosed Dr. John Lipscomb as their substitute expert witness. Plaintiffs disclosed a new rebuttal expert, Dr. Vasilis Vasiliou ("Dr. Vasiliou"). Plaintiffs have also submitted rebuttal reports prepared by Dr. Kenneth Spaeth ("Dr. Spaeth") and Dr. Kathleen Gilbert ("Dr. Gilbert"), whose initial reports the Court addressed in its Opinion and Order issued on June 16, 2026. *See* ECF No. 462-12; ECF No. 462-17. The RTX Defendants have filed two motions—one to exclude Dr. Vasiliou's testimony (ECF No. 474), and the other to exclude rebuttal reports prepared by Dr. Spaeth and Dr. Gilbert (ECF No. 476).

## II. LEGAL STANDARD

The admissibility of expert testimony under the Federal Rules of Evidence is governed by the well-known and oft-cited standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Fed. R. Evid. 702. To implement this evidentiary standard, the district court acts as a "gatekeeper" to "ensure that any and all scientific testimony. . . is not only relevant, but reliable." *Daubert*, 509

U.S. at 589. *Daubert* provides four non-exhaustive considerations that bear on this inquiry: (1) whether a "theory or technique . . . can be (and has been) tested;" (2) whether the "theory or technique has been subjected to peer review and publication;" (3) the technique's "known or potential rate of error . . . and the existence and maintenance of standards controlling the technique's operation;" and (4) whether the theory or technique has found "general acceptance" within the scientific community. *Id.* at 593-94.

District courts in the Seventh Circuit conduct a three-step analysis before admitting expert testimony: they "must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal quotation marks omitted). In short, the Court must evaluate (i) the proffered expert's qualifications, (ii) the reliability of his or her methodology, and (iii) the relevance of his or her testimony. *Id.*

## III. DISCUSSION

The Court will first consider the RTX Defendants' Motion to Exclude Dr. Vasiliou before turning to their motion to exclude the rebuttal reports prepared by Dr. Spaeth and Dr. Gilbert.

### A. Motion to Exclude Dr. Vasiliou

Dr. Vasiliou is a professor and the Chair of the Department of Environmental Health Sciences at Yale School of Public Health. (Vasiliou Reb. Rep. at 1 (ECF No. 485-1)). He has both a Bachelor of Science in Chemistry and a Ph.D. in Biochemical Pharmacology. (*Id.*) His research generally focuses on "the etiology and molecular mechanisms of environmentally induced human disease," and he has conducted specific research relevant to exposure to trichloroethylene (TCE). (*Id.* at 3-5). He has published many papers and serves on numerous boards. (*Id.*).

Regarding Millman, Dr. Vasiliou offers the following summary opinion:

> Based upon my years of research experience in the field of toxicology, neurotoxicology and risk assessment I find it more likely than not that trichloroethylene is capable of causing trigeminal nerve damage and to be a key contributing factor to the occurrence of trigeminal neuralgia in the cases of Mrs. Opal Millman and her husband.

Vasiliou Reb. Rep. at 6. He also opines, with respect to the Powells, that "there is a high degree of scientific certainty that the Powells have experienced excessive levels of benzene exposure and genetic damage with this genetic damage causing a long-term change in their DNA and elevated cancer risk." (*Id.* at 18-19).

The RTX Defendants move to exclude Dr. Vasiliou's testimony pursuant to Federal Rule of Evidence 702, arguing that he is unqualified, that his opinions are based on speculative methodology and are otherwise unreliable, and that the potential dangers of his testimony outweigh any probative value. (ECF No. 474). The Court addresses each argument below.

**1. Qualifications**

The RTX Defendants argue as an initial matter that Dr. Vasiliou is not qualified to testify that exposure to TCE is a contributing factor to trigeminal neuralgia. (ECF No. 481 at 7-9). "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether [an] expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (internal quotation marks omitted). "The question . . . is not whether an expert witness is qualified in general, but whether his qualifications

provide a foundation for him to answer a specific question." *Id.* at 617 (internal quotation marks omitted).

The RTX Defendants' first criticism with respect to Dr. Vasiliou's qualifications is that he is not a medical doctor or neurologist and that he has no experience in treating or diagnosing patients. Their second criticism is that Dr. Vasiliou is unqualified because he has conducted no relevant research. Specifically, the RTX Defendants state that Dr. Vasiliou "has never published any peer-reviewed literature relating to trigeminal neuralgia, he has not conducted any independent research in his laboratory on trigeminal neuralgia in animal models or *in vitro* studies, and he has never conducted or published a meta-analysis or literature review on the purported effects of TCE, vinyl chloride, or benzene." (ECF No. 481 at 8).

The Court finds that Dr. Vasiliou is qualified to testify that exposure to TCE is a contributing factor to trigeminal neuralgia. As an initial matter, there is plenty of case law from this Circuit to indicate that an expert witness need not have a medical degree to testify regarding causation of illness. *See Backes v. Valspar Corp.*, 783 F.2d 77, 79 (7th Cir. 1986) (recognizing that non-physicians, including toxicologists, have been permitted to testify as to causation); *see also Newman ex rel. Newman v. McNeil Consumer Healthcare*, 2013 WL 9936293, at *2 (N.D. Ill. Mar. 29, 2013) ("Toxicologists should not be excluded from testifying about causation merely because they do not possess a medical degree.").

Further, the experience outlined in Dr. Vasiliou's report and supplemental declaration contradicts the RTX Defendants' contention that he is insufficiently qualified to opine on TCE and trigeminal neuralgia. After receiving degrees in Chemistry and Biochemical Pharmacology, Dr. Vasiliou trained in toxicology, gene-environment interactions, and pharmacogenetics at the Department of Environmental Health at the University of Cincinnati, and then became a Professor

and the Director of the Toxicology Graduate Program at the University of Colorado School of Pharmacy. (Vasiliou Reb. Rep. at 3). Since 2014, he has taught at Yale and served as the Chair of the Department of Environmental Health Sciences at Yale School of Public Health. (*Id.*) He also holds professor appointments at the Yale School of the Environment, and in the Department of Ophthalmology & Visual Sciences at Yale Medical School. (*Id.*) Dr. Vasiliou has been teaching toxicology courses at universities for almost a decade—and in those courses, he "regularly address[es] TCE as a model contaminant, discussing its mechanisms of toxicity with [his] students." (Vasiliou Supp. Decl. at 1 (ECF No. 485-2)).

In his supplemental declaration, Dr. Vasiliou stresses his "extensive research" which "focuses on the molecular mechanisms of environmental toxicants like TCE and benzene, particularly how these substances interact with key enzymes such as aldehyde dehydrogenases (ALDH) and cytochrome p-450 enzymes." (*Id.* at 2). As Director of the Yale Superfund Research Center, he oversees work focused on emerging environmental contaminants in drinking water, including TCE—work which "has advanced the understanding of how contaminants like TCE cause toxicity, particularly in how TCE metabolites affect the nervous system." (*Id.* at 3).

As case law support for their position, the RTX Defendants cite the Sixth Circuit's opinion in *Meridia Prod. Liab. Litig. v. Abbott Lab'ys*, 447 F.3d 861, 868 (6th Cir. 2006). In *Meridia*, the appeals court upheld a district court's conclusion that, because an expert was a pharmacologist but not a cardiologist, he could opine as to how the drug at issue functions in the human body—that it elevated blood pressure in the human body—but could not opine as to what effects elevated blood pressure has on the human body. *Id.* The Court finds that the opinion Plaintiffs seek to have admitted here—that TCE is a contributing factor to trigeminal neuralgia—is more akin to what the

*Meridia* court found appropriate testimony for the pharmacologist without a medical degree, as opposed to what they found not to be appropriate testimony.

The Court is satisfied that Dr. Vasiliou's education and training in chemistry, biochemical pharmacology, toxicology, gene-environment interactions, and pharmacogenetics, along with his teaching and research career, qualify him to provide his opinion in this case. If the RTX Defendants believe Dr. Vasiliou's experience is insufficient, they may cross-examine him as to his qualifications at trial.

**2. Causation Opinion**

The RTX Defendants argue that the methodology used by Dr. Vasiliou for his opinions as to any purported link between TCE and trigeminal neuralgia is "fatally flawed." (ECF No. 481 at 9-19). They argue that Dr. Vasiliou improperly conflates trigeminal neuralgia and trigeminal neuropathy, and take issue with the research studies he cites, the reference concentration he uses, the "analytical gap" between his cited references and his opinions, and his failure to conduct a proper differential diagnosis. (*Id.*).

**i. Trigeminal Neuropathy and Trigeminal Neuralgia**

Throughout their motion, the RTX Defendants argue that Dr. Vasiliou's report improperly conflates trigeminal neuralgia and the unrelated conditions referred to as trigeminal neuropathy and trigeminal nerve damage. *See e.g.* ECF No. 481 at 10, 18. They note that, during his deposition, Dr. Vasiliou did not answer when asked if he knew the difference between trigeminal neuralgia and trigeminal neuropathy and contend that he answered incorrectly when asked further questions about both trigeminal neuralgia and trigeminal neuropathy. The RTX Defendants argue that this indicates that "[Dr.] Vasiliou's understanding of the peer-reviewed literature and research studies on trigeminal neuralgia is incomplete and unreliable, as he does not have even a basic

understanding of neurology." (*Id.* at 18). The RTX Defendants also note that Dr. Vasiliou "references numerous articles referring to trigeminal nerve damage, but half of those articles never even mention trigeminal neuralgia." (*Id.* at 10).

In response, Plaintiffs argue that there is a connection between trigeminal neuralgia and trigeminal neuropathy such that conversations about one are relevant to the other. (ECF No. 485 at 9-13). They acknowledge that Dr. James Albers, one of the RTX Defendants' expert witnesses, opines that the trigeminal nerve damage present in trigeminal neuropathy is wholly unrelated and distinct from trigeminal neuralgia—but cite Dr. Vasiliou as contradicting that proposition and explaining that "[i]n cases involving environmental toxins like TCE, which have been shown to cause nerve damage, it is likely that neuropathy will initially occur, with [trigeminal neuralgia] arising as a secondary or delayed complication." (ECF No. 485 at 11-12 (quoting Vasiliou Supp. Decl. at 14)). This debate is one that will need to be resolved by the fact-finder, not by the Court at this juncture. *See Gicla v. United States*, 572 F.3d 407, 414 (7th Cir. 2009) (a "classic battle of the experts" calls "upon the factfinder to determine what weight and credibility to give each expert.").

**ii. Cited Materials**

Next, the RTX Defendants argue that Dr. Vasiliou "has not cited to any articles that actually support his opinion that TCE exposure is a contributing factor to Millman's trigeminal neuralgia." (ECF No. 481 at 10). This argument relies partly on their contention that trigeminal nerve damage and trigeminal neuropathy—which are referenced in articles cited by Dr. Vasiliou—are distinct from and irrelevant to the study of trigeminal neuralgia. As the Court explained above, whether or not the three conditions are related is a matter of debate between the parties' experts. To the extent that the RTX Defendants object to the fact that Dr. Vasiliou does not include any studies that

specifically link TCE exposure to trigeminal neuralgia, the Court notes that experts are not required to cite published, peer-reviewed studies demonstrating causal links to offer causation opinions. *See Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1228 (9th Cir. 2017); *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 24 (1st Cir. 2011).

The RTX Defendants also take issue with the studies Dr. Vasiliou does cite in forming his causation opinion. Specifically, the RTX Defendants object to Dr. Vasiliou's reliance on two community exposure studies in his critique of the Reference Concentration ("cRfC") Dr. Lipscomb uses for trigeminal neuralgia in his report—the Feldman and Kilburn studies. (ECF No. 481 at 11). They make various arguments regarding these studies, including that reliance on these studies was improper because the effects reported by the studies are associated with trigeminal neuropathy, not trigeminal neuralgia, and that neither study mentions facial pain, the hallmark symptom of trigeminal neuralgia. Dr. Vasiliou disagrees with this characterization. He opines that some of the effects reported by those studies—specifically the delayed blink reflex—are associated with trigeminal neuralgia. (ECF No. 485 at 10; Vasiliou Supp. Decl. at 9-10, 22-24). The disagreement between the RTX Defendants' experts and Dr. Vasiliou on this point seems to stem from their disagreement over the connection between trigeminal neuropathy and trigeminal neuralgia, which the Court has already stated that it will not decide here.

The RTX Defendants compare Dr. Vasiliou to experts excluded in *In re Acetaminophen – ASD-ADHD Products Liability Litigation*, a recent case decided by the Southern District of New York, as well as in *In re Paraquat Products Liability Litigation*, a recent case decided by the Southern District of Illinois. (ECF No. 481 at 14 (citing *In re Acetaminophen*, 707 F. Supp. 3d 309 (S.D.N.Y. 2023) and *In re Paraquat*, 730 F. Supp. 3d 793 (S.D. Ill. 2024)).

In *In re Acetaminophen*, the court took issue with the expert's "transdiagnostic" evaluation of literature—by which it meant that the expert treated a variety of neurodevelopmental disorders interchangeably. *In re Acetaminophen*, 707 F. Supp. 3d at 339-342. The RTX Defendants argue that that is what Dr. Vasiliou has done here in relying on literature that discusses trigeminal nerve damage and trigeminal neuropathy in the context of Millman's trigeminal neuralgia. The Southern District of New York's evidentiary ruling was vacated and remanded by the Second Circuit in the intervening time since this motion was briefed. *See Rutledge v. Walgreen Co.*, 182 F.4th 168 (2nd Cir. 2026). Regardless, as the Court explained above, the parties' experts disagree as to the significance of the connection between trigeminal neuropathy and trigeminal neuralgia, and that is a debate into which the Court will not wade at this time.

In *In re Paraquat*, in the words of the RTX Defendants, a causation expert "was excluded for conducting a skewed and one-sided assessment of the available studies, and failing to reliably explain his weight of the evidence approach, among other factors." (ECF No. 481 at 14 (citing 730 F. Supp. 3d 793)). The only way the RTX Defendants connect Dr. Vasiliou to the excluded expert in *In re Paraquat* is to contend that, "like the expert in *In re Paraquat*, [Dr.] Vasiliou interprets the available literature in a generalized and skewed manner, working backward to achieve his desired conclusion." Plaintiffs effectively distinguish this case in their response brief. The expert in *In re Paraquat* was excluded for being inconsistent with definitions throughout the litigation, excluding negative studies, and for proffering opinions that were in direct conflict with EPA's conclusions. The RTX Defendants have not adequately demonstrated to the Court that these factors were met here or otherwise explained to the Court why *In re Paraquat* is applicable to Dr. Vasiliou's rebuttal report.

**iii. Use of the Incorrect Reference Concentration**

The RTX Defendants additionally assert that Dr. Vasiliou's methodology was rendered unreliable by his use of the incorrect reference concentration (cRfC). (ECF No. 481 at 15). Dr. Vasiliou selected a cRfC of TCE ranging from 0.0023 to 0.0071 ppm, which he obtained from table 5-24 of Dr. Lipscomb's expert report, which contains EPA's lowest cRfCs for different effect domains which include trigeminal nerve effects, cognitive effects, and mood and sleep changes. *See* Lipscomb Rep. (ECF No. 462-2). In the table, Dr. Vasilou's chosen range corresponds to cognitive effects as opposed to trigeminal nerve effects—RTX Defendants argue that, therefore, Dr. Vasiliou's calculations related to Millman's exposure to TCE were based on a cRfC that does not correspond to her illness. (*Id.*).

Plaintiffs disagree. Dr. Vasiliou stated in his report that EPA developed the cRfC of 0.0023 to 0.0071 ppm—or 12 to 38 ug/m3—"on the basis of" demyelination of nerves within the hippocampus, and noted that this cRfC is below the average concentrations of TCE within the Millman home, as estimated by Dr. Wells. (ECF No. 485 at 13; Vasiliou Reb. Rep. at 11, 17-18). In his report and supplemental declaration, Dr. Vasiliou gives a thorough explanation as to why, in his opinion, demyelination within the hippocampus is directly relevant to trigeminal neuralgia. (Vasiliou Reb. Rep. at 8-9, 17; Vasiliou Supp. Decl. at 10-13). The Court concludes that this is a debate between experts that can be addressed through cross-examination and which must be settled by the fact-finder. *See Gicla*, 572 F.3d at 414 (A "classic battle of the experts" calls "upon the factfinder to determine what weight and credibility to give each expert.").

**iv. Failure to "Bridge the Analytical Gap"**

The RTX Defendants also argue that Dr. Vasiliou's testimony should be excluded because there is too great an analytical gap between the studies he analyzed and his proffered conclusions.

(ECF No. 481 at 16). As support, they cite the Seventh Circuit's opinion in *C.W. ex rel. Wood v. Textron, Inc*., in which the court upheld a district court's exclusion of an expert in part because "the analytical gap between the studies that [she] cite[d] and the facts of [the] case [was] just too great" to be admissible under *Daubert.* 2014 WL 1047940, at *11; *C.W. ex rel. Wood v. Textron, Ind.*, 807 F.3d 827 (7th Cir. 2015). The RTX Defendants contend that, like the experts addressed in *Textron*, "[Dr.] Vasiliou did not connect the dots between his cited studies and trigeminal neuralgia," instead "blur[ring] critical, scientific lines." (ECF No. 481 at 16).

The Court is unpersuaded. Here, the RTX Defendants fail to provide any detail as to how Dr. Vasiliou fails to "connect the dots." To the extent this is related to their contention that studies related to trigeminal neuralgia and trigeminal neuropathy are not related to trigeminal neuralgia, the Court finds that Dr. Vasiliou has adequately explained the connection, and that whether the connection in fact does exist is not a debate the Court can resolve at this time.

**v. Failure to Conduct Differential Diagnosis**

The RTX Defendants' final criticism of Dr. Vasiliou's causation opinion is that he did not consider potential other causes of Millman's trigeminal neuralgia or otherwise conduct a proper differential diagnosis. In response, Plaintiffs contend that Dr. Vasiliou did not need to conduct a differential diagnosis because he is not a medical doctor and conducted no medical diagnosis.

A differential diagnosis is a method whereby a physician "systematically compares and contrasts clinical findings from a patient's medical history to determine which of two or more diseases with similar symptoms is the one from which the patient is suffering." *Myers v. Ill. Central R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (internal quotation marks omitted). Plaintiffs are correct that, because Dr. Vasiliou is not a medical doctor and is not offering a medical diagnosis, he did not need to conduct a differential diagnosis. Plenty of non-medical doctors opining on causation,

however, use a similar methodology—a differential etiology. In a differential etiology, the expert "rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment." *Id*. The fact that Dr. Vasiliou is not a medical doctor would not prevent him from conducting a differential etiology.

The question then becomes whether Dr. Vasiliou *had* to conduct a differential etiology for his causation methodology to be considered reliable. Case law is clear that a differential etiology is one "accepted and valid methodology" for determining causation, *id.*, so long as it reflects "scientifically valid decisions as to which potential causes should be 'ruled in' and 'ruled out,'" *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). *See also Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 433 (7th Cir. 2013) (referring to differential etiology as "*a* generally accepted means for evaluating the cause of a plaintiff's injury") (emphasis added). However, the RTX Defendants have provided no authority—and the Court sees none—to indicate that conducting a differential diagnosis or etiology is the *only* appropriate methodology for determining causation. *See West v. Home Depot U.S.A. Inc.*, 2024 WL 1834112, at *4 (N.D. Ill. Apr. 26, 2024) ("[A] differential etiology is not required to establish causation[.]").

Dr. Vasiliou does not claim to have conducted a differential diagnosis or differential etiology. But the Court must still find that he employed an otherwise reliable methodology to support his causation opinions. In arguing that Dr. Vasiliou's methodology was not reliable, the RTX Defendants cite *Hannan v. Pest Control Servs., Inc.*, an Indiana Court of Appeals case in which the court excluded a causation expert's testimony because the expert was unaware of the concentration and duration of the exposure he testified caused the plaintiffs' medical condition, relied on coincidental timing, and did not perform testing to rule out alternative causes. (ECF No.

481 at 17 (citing *Hannan*, 734 N.E.2d 674, 682 (Ind. Ct. App. 2000)). They contend that, like the expert in *Hannan*, Dr. Vasiliou did not visit the Millman residence, did not conduct any independent research or sampling of TCE levels at the residence, and is not qualified to and did not rule out any alternative causes of Millman's trigeminal neuralgia by conducting a proper differential diagnosis—and that, therefore, as the expert's conclusions in *Hannan* were excluded based on unsupported speculation, so must Dr. Vasiliou's opinions, which were reached by misconstruing available literature and making unsupported assumptions.

The Court finds *Hannan* distinguishable. The Court has already concluded that Dr. Vasiliou is qualified to provide his opinions, that his use of the available literature was appropriate, and that he did not need to conduct either a differential diagnosis or a differential etiology. The Court also finds that the fact that Dr. Vasiliou did not visit the Millman residence or conduct any independent sampling of TCE levels does not mean that his methodology was unreliable, as Dr. Vasiliou relied on Dr. Wells's estimated indoor air concentrations of TCE in Millman's home. The RTX Defendants have provided no authority for the proposition that an expert may only rely on sampling he does himself and, if they had, there would be plenty of contradicting case law. *See, e.g. Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999) ("[R]eview of experimental, statistical, or other scientific data generated by others in the field may suffice as a reasonable methodology upon which to base an opinion.") (internal quotation marks omitted); *Phillips v. Raymond Corp.*, 364 F. Supp. 2d 730, 743 (N.D. Ill. 2005) ("[T]he process of analyzing assembled data while using experience to interpret the data is not illicit; an expert need not actively conduct his or her own tests to have a valid methodology.").

Further, the Court finds the Southern District of Illinois's opinion in *Taylor v. Union Pac. R.R. Co.* instructive here. *See* 2010 WL 3724283, at *5 (S.D. Ill. Sept. 16, 2010). In declining to

exclude a toxicologist's causation opinion in that case, the court cited the Federal Judicial Center's Reference Manual on Scientific Evidence (RMSE) as stating:

> An opinion on causation should be premised on three preliminary assessments. First, the expert should analyze whether the disease can be related to chemical exposure by a biologically plausible theory. Second, the expert should examine if the plaintiff was exposed to the chemical in a manner that can lead to absorption into the body. Third, the expert should offer an opinion as to whether the dose to which the plaintiff was exposed is sufficient to cause the disease.

*Taylor*, 2010 WL 3724283, at *5 (quoting "Reference Guide on Toxicology," Federal Judicial Center, Reference Manual on Scientific Evidence 419). The RMSE, which governs the admissibility of a toxicologist's expert testimony, has been adopted in this Circuit. *See Wintz v. Northrop Corp.*, 110 F.3d 508, 513 (7th Cir. 1997). As Plaintiffs note, in his opinion, Dr. Vasiliou "explained the biological plausibility of TCE to have contributed to Ms. Millman's trigeminal neuralgia (Ex. #1 at 6–11, 16–18; Ex. #2 at 7–14, 19–24, 26–28); he explained how Ms. Millman's exposures to TCE in her home would have caused TCE to be absorbed into her body (Ex. #1 at 11, 16–18); and he opined that the levels of TCE to which she was exposed was sufficient to have contributed to her disease (*id.* at 11–18)." (ECF No. 485 at 6). The Court finds that Dr. Vasiliou's methodology in forming his causation opinion was reliable.

**3. Indoor Air Concentration Opinion**

The RTX Defendants also take issue with Dr. Vasiliou's estimations of indoor air concentrations as unreliable, criticizing his calculation model and failure to provide background work. (ECF No. 481 at 19).

Dr. Vasiliou based his calculations on the "Maxwell model," a model from a 1991 article used to estimate indoor air concentrations of volatile organic chemicals such as TCE. (Vasiliou Reb. Rep. at 13, 67-68). The RTX Defendants object to Dr. Vasiliou's use of the model, arguing that the facts that Dr. Vasiliou has not published any peer-reviewed literature employing this model,

has never used the model in research in performing a risk assessment, and has never estimated maximum exposures of any of the relevant contaminants outside of this litigation renders his use of the model improper. (ECF No. 481 at 19). The Court finds this argument unpersuasive. Dr. Vasiliou testified that while he has not previously applied the model to TCE contamination, he has used the model for other cases with his toxicology students. (Vasiliou Dep. at 15:4-16:24, 192:19-25 (ECF No. 485-6)). But even if that were not the case, there is no requirement that an expert must have used a model before in order to use it in an opinion. Further, Dr. Vasiliou has testified that the Maxwell model is "established." (Vasiliou Dep. at 130:11-19).

The RTX Defendants also object to Dr. Vasiliou's use of the Maxwell model because it was originally used for the evaluation of exposure by inhalation from chemicals present in tap drinking water, as opposed to the vapor intrusion exposure claimed by plaintiffs in this case. (ECF No. 481 at 19-20). The reason this is significant, the RTX Defendants explain, is that the drinking water in the Town of Andrews has been at or below the maximum contaminant levels ("MCLs") specified in the Federal Drinking Water Act and adopted by IDEM since at least 1994. In their response brief, Plaintiffs explain that the exposures in the Feldman and Kilburn studies contained TCE concentration ranges in drinking water, not in indoor air. Dr. Vasiliou then used the Maxwell model to convert those concentrations into indoor air concentrations which could properly be compared with the exposures encountered by Millman. (ECF No. 485 at 22). In reply, the RTX Defendants push back against this explanation, maintaining that the calculations are unreliable.

The Court finds this to be a dispute between experts best left to the finder of fact to resolve. *See LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 946 (7th Cir. 2019) ("In a case of dueling experts, . . . it is left to the trier of fact . . . to decide how to weigh the competing expert testimony.") (internal quotation marks omitted). Any necessary explanation or clarification regarding the

importance of drinking water to Dr. Vasiliou's calculations can be accomplished through cross-examination.

The RTX Defendants' final objection to Dr. Vasiliou's indoor air concentration opinions is that he "blindly relies" on the calculations performed by Dr. Wells as opposed to taking his own samples and making his own calculations. (ECF No. 481 at 20). The RTX Defendants provide no support for the proposition that causation experts must make their own exposure measurements and calculations, and there is plenty of case law indicating that experts may properly rely on the reports of other experts in forming their opinions. *See, e.g. Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000) ("Indeed, courts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable."); *Wilbern v. Culver Franchising Sys.*, 2015 WL 5722825, at *14 (N.D. Ill. Sept. 29, 2025) ("[A]n expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion.") (internal quotation marks omitted). Further, the Court has already determined Dr. Wells's testimony to be reliable, so is not persuaded by the RTX Defendants' argument that Dr. Vasiliou may not rely on Dr. Wells's calculations because they are unreliable. *See* 6/16/26 Opinion & Order (ECF No. 516).

**4. Jack Millman**

In his report, Dr. Vasiliou mentions Jack Millman, Opal Millman's husband, only once, stating in his "summary opinion" that he finds it to be "more likely than not" that TCE was "a key contributing factor to the occurrence of trigeminal neuralgia in the case of Opal Millman *and her husband*." (Vasiliou Reb. Rep. at 6) (emphasis added). Dr. Vasiliou also lists "Jack Millman Medical Record" in his list of documents reviewed, and mentions the medical records and Jack Millman's trigeminal neuralgia diagnosis in his deposition. (Vasiliou Dep. at 103:16-18-106:3).

During the deposition, he noted that Jack Millman's MRI displayed a vascular abnormality that could have been the result of TCE exposure. (*Id.* at 104:16-114.5).

The RTX Defendants argue that the Court must exclude these opinions because Dr. Vasiliou is not qualified to provide any medical opinions as to Jack Millman's health, to interpret an MRI, or to diagnose anyone with trigeminal neuralgia, as well as because Jack Millman is not a plaintiff, so any attempt to "interject his purported diagnosis in this case is misleading and inappropriate." (ECF No. 481 at 22-23). In their reply brief, the RTX Defendants argue that Dr. Vasiliou's testimony regarding Jack Millman is improper for the additional reason that Jack Millman's medical records are incomplete. (ECF No. 493 at 13-14). Plaintiffs argue that Dr. Vasiliou's consideration of Jack Millman's trigeminal neuralgia diagnosis was reasonable, as the information appeared not only in Jack Millman's medical chart but in Opal Millman's medical records as well—and the fact that both Millmans suffered from this rare disease is certainly relevant. (ECF No. 485 at 23-24).

The Court agrees that Dr. Vasiliou is not qualified to diagnose Jack Millman with trigeminal neuralgia or to testify as to his interpretation of Jack Millman's MRI and, therefore, excludes any such testimony. The Court finds that Dr. Vasiliou may, however, consider Jack Millman's diagnosis—as made by Jack Millman's doctors and noted in both his and Opal Millman's medical charts—in forming his opinions regarding the cause of Opal Millman's trigeminal neuralgia diagnosis. The Court agrees with Plaintiffs that the fact that both Millmans were diagnosed with the disease is relevant and appropriate evidence. The Court addressed the RTX Defendants' arguments regarding the incompleteness of Jack Millman's medical records in its opinion on the expert reports prepared by Gilbert and Spaeth, and will reject them here for the same reasons it rejected them in its prior opinion. *See* 6/16/26 Opinion & Order at 51-53 (ECF No. 516).

The Court will allow Dr. Vasiliou to testify as to Jack Millman's diagnosis, so long as he avoids making that diagnosis himself and contains any mention of Jack Millman to its relevance to the question of causation of Opal Millman's trigeminal neuralgia diagnosis.

**5. Benzene**

While Dr. Vasiliou's opinion is focused on Millman, he does include a rebuttal of Dr. Lipscomb's statements regarding Eric and Laury Powell. In that opinion, Dr. Vasiliou states that there was a "known gasoline leak" containing benzene at Andrews Dairy, located across the street from the Powells. He opines that, "[g]iven the close proximity of the Powell home to this groundwater gasoline spill and the fact that groundwater flows in a southwesterly direction, towards their home, it is highly likely that Dr. Lipscomb is incorrect in supporting Dr. McHugh's conclusion that 'there is no evidence to indicate that benzene was an indoor air contaminant' at the Powell home." (Vasiliou Reb. Rep. at 18). He then references the indoor air concentrations calculated by Dr. Wells in concluding that "there is a high degree of scientific certainty that the Powells have experienced excessive levels of benzene exposure and genetic damage with this genetic damage causing a long-term change in their DNA and elevated cancer risk." (*Id.* at 18-19).

The RTX Defendants move to exclude this opinion, arguing that Dr. Vasiliou is unqualified to offer this opinion, that he relies on incomplete data, and that he has no independent knowledge of the Powells' exposure to benzene, relying instead on Dr. Wells's calculations. (ECF No. 481 at 23-24). Plaintiffs argue that Dr. Vasiliou has extensive expertise in the toxicity of benzene, and that Dr. Vasiliou may rely on Dr. Wells's opinions, as they are reliable and admissible. (ECF No. 485 at 24).

Pursuant to the Court's October 23, 2026 Order (ECF No. 517), on November 6, 2026, Defendants L.D. Williams, Inc. and LDW Development LLC (the "Williams Defendants") filed a

motion to strike Dr. Vasiliou's benzene opinions. (ECF No. 519). Plaintiffs have 30 days from the filing of that motion to respond. *See* ECF No. 517. Because there is significant overlap between that motion and this section of the RTX Defendants' motion, the Court takes this question under advisement and reserves ruling on this question until briefing on the Williams Defendants' motion is complete.

**6. General Arguments**

**i. Litigation-Driven**

The RTX Defendants also argue that Dr. Vasiliou's opinions should be excluded because they are "litigation-driven"—in other words, he developed them expressly for purposes of testifying. As evidence for this argument, they state that (1) he is not a medical doctor and therefore has never diagnosed any individual with trigeminal neuralgia, (2) he has never published any peer-reviewed literature relating to TCE exposure and any neurological condition, (3) he has never calculated or estimated indoor air concentrations for any of the relevant contaminants, and (4) he has never previously used the Maxwell model to estimate or calculate air concentrations of TCE for an individual. (ECF No. 481 at 21).

As explained above in the section evaluating Dr. Vasiliou's qualifications, the Court finds that Dr. Vasiliou need not be a medical doctor or have diagnosed anyone with trigeminal neuralgia in order to offer his opinions, and that Dr. Vasiliou's research and other experience is relevant to TCE exposure and neurological conditions. The Court is not persuaded that the fact that Dr. Vasiliou has not conducted this exact same research or performed calculations in this exact some context should disqualify him here.

**ii. Prejudicial**

Finally, the RTX Defendants argue that the "limited" probative value of Dr. Vasiliou's testimony is outweighed by its prejudicial nature. (ECF No. 481 at 24-25). In this section, they provide little argument other than repetition of their prior arguments—that Dr. Vasiliou is unqualified to provide his opinion and that his reliance on Dr. Wells's calculations renders his opinions unreliable. They also argue that Dr. Vasiliou's opinions are "not really rebuttal" and are rather "more appropriately viewed as a repetition and/or expansion of plaintiffs' other expert's original opinions."

The Court has already determined that the RTX Defendants' arguments regarding Dr. Vasiliou's qualifications and his reliance on calculations made by Dr. Wells are unpersuasive. The RTX Defendants do not expand on their argument that Dr. Vasiliou's report is not proper rebuttal, and the Court is not persuaded that it is not, as it does "contradict or rebut evidence on the same subject matter" as Dr. Lipscomb's report. Fed. R. Civ. P. 26.

For the above reasons, the Court grants the RTX Defendants' motion to exclude the opinion and testimony of Dr. Vasiliou to the extent that he diagnoses Jack Millman with trigeminal neuralgia, and denies the RTX Defendants' motion to exclude the opinion and testimony of Dr. Vasiliou in all other respects.

**B. RTX Defendants' Motion to Exclude Rebuttal Reports Prepared by Dr. Spaeth and Dr. Gilbert**

Plaintiffs originally disclosed Dr. Spaeth and Dr. Gilbert as expert witnesses on June 15, 2021. Both sets of Defendants filed motions to exclude their testimony. When Plaintiffs disclosed Dr. Vasiliou's rebuttal report pursuant to the Court's July 2023 Order, they also disclosed rebuttal reports prepared by Dr. Spaeth and Dr. Gilbert. *See* ECF Nos. 462; 462-12; 462-17.

The RTX Defendants do not include any specific criticisms of either expert's rebuttal report. Rather, they argue generally that the reports "are not rebuttal, but rather a duplicative supplement and expansion of the opinions in their original expert reports." (ECF No. 476 at 2). In response, Plaintiffs argue that the submissions are proper rebuttal reports, as they directly address Dr. Lipscomb's opinions and they only elaborate and provide additional detail underlying their original opinions, as opposed to offering new opinions.

A rebuttal expert report is admissible pursuant to Federal Rule of Civil Procedure 26, if it "contradict[s] or rebut[s] evidence on the same subject matter" identified in the report to which it responds. As the RTX Defendants note, "[e]vidence that is offered only as additional support of a party's argument and that does not contradict any evidence introduced by the opposing party is not proper rebuttal." *Mendez v. City of Chicago*, 2021 WL 3487328, at *3 (N.D. Ill. Aug. 9, 2021). However, as Plaintiffs point out in response, courts in this Circuit have also held that, so long as a rebuttal report addresses the same subject matter identified in the other party's expert report, the rebuttal expert may expand on opinions included in the initial reports. *See City of Gary v. Shafer*, 2009 WL 1370997, at *5 (N.D. Ind. May 13, 2009).

The Court agrees with Plaintiffs that the rebuttal reports submitted by Dr. Spaeth and Dr. Gilbert are appropriate in scope. Because the RTX Defendants do not identify which portions of the experts' rebuttal reports they find objectionable, the Court will evaluate them on a general basis and will not go sentence by sentence through each report.

Dr. Lipscomb specifically addresses Dr. Spaeth's expert report in Section 11.1.2 of his report, and specifically addresses Dr. Gilbert's expert report in Section 11.1.3 of his report. (Lipscomb Rep. at 22-25 (ECF No. 484-4)). As Plaintiffs point out, he also included opinions relevant to their expert testimony in Sections 10.1 and 10.5. In their rebuttal reports, both Dr.

Spaeth and Dr. Gilbert directly respond to Dr. Lipscomb's report. They organize their reports into responses to specific, identified opinions offered by Dr. Lipscomb. While there may be additional detail in these reports that were not in the original reports provided by Dr. Gilbert and Dr. Spaeth, the Court finds that they "contradict or rebut evidence on the same subject matter" as Dr. Lipscomb's report such that they qualify as proper rebuttal reports. Fed. R. Civ. P. 26; *See also Shafer*, 2009 WL 1370997, at *5.

## IV. CONCLUSION

For the reasons set forth above, the Court:

(1) GRANTS in part and DENIES in part the RTX Defendants' Motion to Exclude the Opinion and Testimony of Dr. Vasiliou (ECF No. 474). The Court:
  a. GRANTS the motion to the extent that Dr. Vasiliou diagnoses Jack Millman with trigeminal neuralgia;
  b. RESERVES RULING on the question of whether to exclude Dr. Vasiliou's opinions on benzene; and
  c. DENIES the motion in all other respects; and

(2) DENIES the RTX Defendants' Motion to Exclude the Supplemental Reports of Dr. Spaeth and Dr. Gilbert (ECF No. 476).

SO ORDERED on November 10, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT